Schlesener v. Mott.

No. 22,513.

L. A. SCHLESENER, *Appellee*, v. W. H. MOTT AND J. R. KOHLER,
Partners, etc., *Appellants*.

### SYLLABUS BY THE COURT.

1. REAL-ESTATE AGENTS—*Utmost Good Faith Owed to Their Principal.*
   Agents employed by a landowner to sell or exchange properties for
   an agreed commission, owe their principal the utmost good faith
   and loyalty while their agency exists, and if they violate their duty
   and obligation to him by concealing information as to the prices of
   property, and by misrepresentation and fraud obtain a profit to them-
   selves in excess of the agreed commission, they forfeit their right to
   the commission and render themselves liable for the damages suffered
   by the principal through their bad faith and breach of duty.

2. SAME—*Findings of Fraud—Sustained by Evidence.* The findings of
   the jury as to the misrepresentation and fraud of the defendants, are
   held to be sustained by the evidence.

3. TRIAL—*Trial Court May Correct Manifest Errors in Findings.* It is
   competent for the trial court to correct a manifest error in the find-
   ings and verdict of the jury as to the amount of damages sustained by
   the injured parties.

4. TRIAL—*Illness of Juror—Delay of Trial—Judicial Discretion.* After
   the evidence had been concluded a juror became ill and the court there-
   upon continued the case for a number of days until the juror had re-
   covered from his illness, and then resumed and finished the trial of the
   case. *Held,* that such a continuance was within the discretion of the
   court and, as no prejudice appears to have resulted from the action, it
   affords no ground for a reversal.

5. JUDGMENT—*Modified as to Amount of Judgment.* As one item of
   credit was not allowed by the jury to the defendants, a modification of
   the judgment to that extent is directed.

Appeal from Dickinson district court; ROSWELL L. KING,
judge. Opinion filed June 5, 1920. Modified and affirmed.

*C. S. Crawford,* and *E. S. Crawford,* both of Abilene, for the
appellants.

*G. W. Hurd, Arthur Hurd,* and *Bruce C. Hurd,* all of Abi-
lene, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: L. A. Schlesener brought this action to recover damages resulting from the false representations and fraud of his agents, W. H. Mott and J. R. Kohler, in the sale, purchase and exchange of parcels of real estate. Plaintiff recovered damages in the amount of $3,504.22, and from the judgment defendants appeal.

It appears that plaintiff owned a tract of land in Texas upon which a value of $8,000 was placed. It was subject to an encumbrance of $3,812, which included four vendor's lien notes of $373.75 each, previously executed by plaintiff. He employed defendants as his agents to procure a sale or an exchange of his Texas land for other property. Sometime afterwards the defendants informed plaintiff they had obtained an offer of a tract of 174 acres of land in Butler county, Kansas, in exchange for his Texas land. They represented that the Kansas land was priced at $11,310, which was $65 an acre, and it was subject to a mortgage of $2,500. The fact was that the owner, Wilson, had given an option on the land at the price of $5,500 to one Colcrazer, and the latter had offered to turn it over to the defendants for an allowance of one dollar an acre, amounting to $174. The defendants concealed from plaintiff the facts relating to the ownership of the land and led him to believe that the owner of the land would take the Texas land of the plaintiff at $8,000, subject to the encumbrance of $3,810.80, which he would assume, and convey the Kansas land to plaintiff at a price of $11,310, which plaintiff was to take subject to the encumbrance of $2,500, and pay the difference between the net values so arrived at, amounting to $4,622.80, in cash. While on a trip to inspect the Kansas land, the defendants adroitly brought him in contact with a man who said he lived near the Kansas land and knew its value, who told the plaintiff that it was worth from $100 to $125 an acre. After some hesitation the plaintiff was finally induced to make the exchange, and he paid $4,622.80 and received a deed for the Kansas land, subject to the encumbrance. It appears that the owner of the Kansas land had not negotiated for nor taken the Texas land in exchange for that conveyed by him, and when the plaintiff executed a deed for the

Texas land he found that no grantee was named in the instrument. He called attention to the omission, saying it was important to him to have a grantee that was responsible, one who would pay the vendor's lien notes upon which plaintiff was liable. The defendants represented that they had reasons of their own for leaving the grantee unnamed, but that they would guarantee that the grantee would pay the notes and relieve the plaintiff from liability on them. The defendants held the Texas land in their own right for future disposition. Sometime after the exchange the plaintiff was sued upon the vendor's lien notes, which defendants had guaranteed would be paid, and this put plaintiff on inquiry, and he then learned the real facts of the transaction and of the fraud that had been perpetrated upon him. While the indebtedness arising on these notes amounted to $1,416, it appears that the plaintiff obtained a settlement of the indebtedness for the sum of $1,235. The defendants associated with them in the negotiations one Charles Bradshaw, all of whom were acquainted with the important facts, and when the deal was completed and the exchange made, the profits arising from the difference in the actual cost of the Kansas land, and the fraudulently swollen price which defendants had induced plaintiff to pay for it, were divided between defendants and Bradshaw, and the defendants also collected from plaintiff the agreed commission of $200 for making the exchange.

It is contended by the defendants that the evidence did not warrant the findings and judgment that were rendered. The misrepresentations made to plaintiff and the fraud perpetrated upon him were flagrant, and the evidence of them was abundant. Under their employment they owed to plaintiff the utmost good faith and loyalty. This principle required them to frankly inform the plaintiff of the actual price of the Kansas land, but instead of doing so they doubled the price and represented that the inflated price was the lowest figure at which it could be obtained. The most that they were entitled to was the agreed compensation, but they violated their duty and obligation to him and appropriated to themselves the difference between the actual price and the fraudulently fixed price which they induced the plaintiff to pay for the Kansas land, and thereby they lost their right to the agreed commission

and rendered themselves liable to the plaintiff for the damage suffered by him through their bad faith and breach of duty. (*Jeffries v. Robbins*, 66 Kan. 427, 71 Pac. 852; *Kershaw v. Schafer*, 88 Kan. 691, 129 Pac. 1137; *Rinebarger v. Weesner*, 91 Kan. 303, 137 Pac. 969; *Ratliffe v. Cease*, 100 Kan. 445, 164 Pac. 1091; *Avery v. Baird*, 106 Kan. 507, 188 Pac. 254; 31 Cyc. 1430; 2 C. J. 697; 21 R. C. L. 825.)

Although questioned, the evidence appears to be sufficient to show that the Kansas land could have been purchased from Wilson, the owner, for $5,500, and there was the added amount of $174 which Colcrazer asked for his option. No allowance appears to have been made by the jury for the $174 which was actually paid by the defendants to Colcrazer, and as he appears to have had no connection with the misrepresentations or fraud of the defendants, and the amount paid was not an unreasonable charge, we think that allowance should have been made by the jury.

There is a complaint that the findings are not supported by the testimony. An error was made by the jury in the finding that the plaintiff was entitled to $1,416 for the vendor's lien notes on the Texas land, which the plaintiff was compelled to pay. Since the plaintiff settled this claim by the payment of $1,235, he could only recover on that item the actual loss sustained. This error, however, was corrected by the trial court by eliminating the excess. The court had the authority to make the reduction, and of this ruling there is no good ground for complaint.

Complaint is also made of the instructions to the jury, in that the evidence did not present the issues as outlined by the court, nor the instructions properly state the law applicable to the facts. A careful examination of the instructions satisfies us that the issues were fairly presented and that the law of the case given to the jury was substantially correct.

It appears that after the evidence was submitted, one of the jurors was seized with an illness which rendered him unable to attend court. On that account the jury were duly cautioned and permitted to separate, and the case was continued for a number of days, and until the juror was able to resume his duties. Afterwards the case was argued and submitted to the jury. The postponement of the case and the resumption of the

trial upon the recovery of the juror were well within the discretion of the trial court.

Other exceptions are taken to the rulings of the trial court, but in them we find no error nor anything requiring special comment.

Because of the disallowance of the item of $174 actually paid to Colcrazer for the option which he held, that amount should have been added to the $5,500, making the total cost of the Kansas land $5,674.

The case will therefore be remanded with the direction that the judgment be modified by reducing the verdict to the extent of $174, and with this reduction the judgment is affirmed.