(131 P.3d 1264)

No. 94,111

AHMAD ALI SULTANI and NAJIBA SULTANI, *Appellants,* v. APRIL ANN BUNGARD, *Appellee.*

Opinion filed April 14, 2006.

*Michael L. Sexton*, of Sexton, Shelor & Latimer, of Shawnee Mission, for appellants.

*David M. Druten*, of Coates & Logan, LLC, of Overland Park, for appellee.

Before ELLIOTT, P.J., GREEN and GREENE, JJ.

GREEN, J.: Ahmad Ali Sultani and Najiba Sultani appeal from the trial court's denial of their motion for a new trial. The Sultanis argue that the jury should have awarded noneconomic damages in this wrongful death case. The trial court determined that the Sultanis had waived their right to a new trial because they had declined to require the jury to return to deliberations and include an award of noneconomic damages in its verdict. We agree with the trial court's determination. Because the Sultanis decided to accept the verdict and not have the jury return to deliberations to award noneconomic damages, they waived any defect that existed in the jury's failure to award noneconomic damages. Accordingly, we affirm.

The Sultanis brought this wrongful death action against April Bungard after the Sultanis' 34-year-old son, Ahmad J. Sultani, sustained fatal injuries in a motor vehicle accident. Bungard was driving the car that collided with the motorcycle driven by Ahmad J. Sultani. The Sultanis alleged that Bungard's negligence had caused the motor vehicle accident which resulted in their son's death. The Sultanis claimed that as a result of their son's death, they suffered total damages of more than $75,000, which included both economic and noneconomic damages.

A jury trial was conducted over several days in December 2004. The jury found Bungard to be 57 percent at fault and Ahmad J. Sultani to be 43 percent at fault. The jury awarded damages to the Sultanis as follows:

| | |
|---|---|
| Noneconomic loss to date | $0 |
| Future noneconomic loss | $0 |
| Funeral expense | $2,800 |
| Economic loss to date | $1,000 |
| Future economic loss | $7,200 |
| Total damages | $11,000 |

After the jury returned its verdict, the trial court offered the Sultanis the option to require the jury to resume deliberations to consider an award for noneconomic damages. The trial court told

the Sultanis that they could have some time to research the issue and that the jury could be instructed to return the following morning. Nevertheless, the Sultanis decided to accept the verdict.

The Sultanis later moved for a new trial, arguing that the jury's failure to award noneconomic damages was contrary to the evidence presented at trial. The Sultanis pointed out that the uncontradicted evidence established that they had suffered grief and mental anguish from their son's death and that they had suffered the loss of their son's comfort, companionship, and society. Bungard responded to the Sultanis' motion for a new trial and argued that the jury's verdict was not contrary to the evidence. In addition, Bungard argued that the Sultanis had waived their right to object to the verdict. The trial court denied the Sultanis' motion for a new trial, finding that they had waived their right to a new trial by declining to require the jury to resume deliberations for an award of noneconomic damages.

On appeal, the Sultanis maintain that they are entitled to a new trial because the jury's verdict was based on passion and prejudice. Moreover, the Sultanis contend that the jury ignored uncontradicted evidence that they suffered loss of comfort, companionship, and society and mental anguish and bereavement from their son's death. "The granting of a new trial is a matter of trial court discretion and, as with all discretionary matters, will not be disturbed on appeal except by a showing of abuse of that discretion. [Citation omitted.]" *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 485, 15 P.3d 338 (2000). "Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. [Citations omitted.]" *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 44, 59 P.3d 1003 (2002).

Here, the trial court found that the Sultanis had waived their right to a new trial. As our Supreme Court observed in *Flott v. Wenger Mixer Manufacturing Co.*, 189 Kan. 80, 90, 367 P.2d 44 (1961), litigants should take advantage of their rights at a proper time: "In practice, it is required of everyone to take advantage of his rights at a proper time, and his neglect to do so will be considered as a waiver." The *Flott* court defined waiver as follows:

"Waiver is ordinarily the intentional relinquishment of a known right and is a voluntary act. It is the expression of an intention not to insist upon what the law affords. While it is consensual in nature, the intention may be inferred from conduct, and the knowledge may be actual or constructive, but both knowledge and intent are essential elements." 189 Kan. at 90.

Discussing the concept of waiver, 58 Am. Jur. 2d, New Trial § 39, p. 111, discusses how a litigant may waive matters that constitute grounds for a new trial:

"Litigants will be deemed to have waived, or will be considered as being estopped to rely upon, matters constituting grounds of new trial which come to their attention or knowledge during the course of trial, or of which they should, by the exercise of reasonable diligence, have acquired knowledge, where they fail to make objection at the time and seek to have the defects cured."

Here, the trial court made the Sultanis aware of the potential problem with the jury's failure to award noneconomic damages. Giving the Sultanis the opportunity to have the jury return to deliberations to award a sum for noneconomic damages, the trial judge stated: "[Y]ou are going to call the shots. If you want to have [the jury] come back tomorrow morning, I'll let you do research cause I would rather have [the jury] deliberate a little further if they have to give something on a noneconomic loss."

In *Stowers v. Rimel*, 19 Kan. App. 2d 723, 875 P.2d 1002 (1994), this court considered whether the trial court may order the jury back to the jury room to reconsider a matter and to correct an incomplete, defective, or inconsistent verdict. In particular, stating that the trial court properly ordered the jury to resume deliberations, this court stated:

"The failure of a jury to award damages for pain and suffering was inconsistent with its award for damages for medical expense and with the evidence. Under these circumstances, the trial court could have ordered an additur or a new trial. The trial court also had a third option which it chose to exercise. It returned the jury to the jury room to resume its deliberations." 19 Kan. App. 2d at 728-29.

The Sultanis' conduct in declining to have the jury return to deliberations and in accepting the verdict constituted a waiver of any right they might have had to recover noneconomic damages in their wrongful death action. Although the Sultanis knew there might be a problem with the jury's failure to award noneconomic

damages, they decided not to cure the potential defect by having the jury return to deliberations. The *Rimel* court stated that returning the jury to deliberate was preferable to a costly new trial and was in the interest of judicial economy. 19 Kan. App. 2d at 727.

Nevertheless, the Sultanis contend that having the jury return to deliberate on noneconomic damages would not have served justice because the jury would have awarded a paltry sum for noneconomic damages. In their brief, the Sultanis make the following circular argument:

"This jury had shown its passion and prejudice in knowingly failing to award noneconomic damages. Justice would not be served by having the jury return to deliberations and award a paltry sum for the substantial non-economic losses suffered by these parents. It is simply unreasonable to expect that a jury, whose verdict reflects their passion and prejudice, to return to deliberations and suddenly change their beliefs and convictions."

The circularity of this argument can be shown by pointing out its basic structure: Because the jury had shown its passion and prejudice by failing to award noneconomic damages, it would have been unreasonable to expect the jury to change its beliefs and convictions and award an adequate amount for noneconomic damages. Therefore, it would have been pointless to have the jury return to deliberate on noneconomic damages.

The above construction asks us to assume the truth of the conclusion: It would have been pointless to have the jury return to deliberate on noneconomic damages. The conclusion depends on the premise that it would be unreasonable to expect the jury to change its beliefs and convictions and award an adequate amount for noneconomic damages. Because the premise and the conclusion actually make the same claim, the reasoning is circular and proves nothing. The conclusion simply restates the evidence. The Sultanis have not offered this court any proof that it would have been a fruitless effort to have the jury resume deliberations for an award of noneconomic damages.

Moreover, the Sultanis never raised this argument when the trial court offered to have the jury resume deliberations on the award. Instead, counsel for the Sultanis stated that they would accept the

verdict. The trial court then accepted the jury's verdict. The Sultanis cannot lead the trial court into accepting the jury's verdict and then argue that such verdict should never have been accepted. See *Gilliland v. Kansas Soya Products Co.*, 189 Kan. 446, 451-52, 370 P.2d 78 (1962) ("Where counsel for one party causes or invites a particular ruling, such party cannot later argue that such ruling was erroneous. [Citation omitted.]"); *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. 452, 459, 856 P.2d 906 (1993) (" 'A defendant may not complain of rulings or matters to which he has consented, or take advantage of error upon appellate review which he invited, or in which he participated.' ") (quoting *Mitchell, Trustee v. Moon*, 206 Kan. 213, Syl. ¶ 3, 478 P.2d 203 [1970]).

The Sultanis' decision to not have the jury return to deliberations to award noneconomic damages and to accept the jury's verdict waived any defect that existed in the jury's failure to award noneconomic damages.

Affirmed.